STATE of Wisconsin EX REL. IN RE the SUPPORT OF ROBERT H.:

CALUMET COUNTY DEPARTMENT OF HUMAN SERVICES, Petitioner-Respondent,

v.

RANDALL H., Respondent-Appellant.†

Supreme Court

*No. 01–1272. Oral argument September 11, 2002.—Decided November 21, 2002.*

2002 WI 126

(Also reported in 653 N.W.2d 503.)

† Motion for reconsideration denied February 21, 2003.

For the respondent-appellant, there were briefs by *Brett C. Petranech* and *Kelly & Petranech LLP,* Madison, and oral argument by *Brett C. Petranech.*

For the petitioner-respondent, there was a brief and oral argument by *Melody Buchinger,* corporation counsel.

An amicus curiae brief was filed by *Mary S. Gerbig, Mary L. Hubacher, Mark L. Olson* and *Davis & Kuelthau, S.C.,* Green Bay, on behalf of the Wisconsin Counsel of Administrators of Special Services, with oral argument by *Mary S. Gerbig.*

An amicus curiae brief was filed by *Jeffrey Spitzer-Resnick,* Madison, on behalf of the Wisconsin Coalition for Advocacy.

An amicus curiae brief was filed by *Lucy T. Brown, Joanne Huston* and *Bruce Meredith,* Madison, on behalf of the Wisconsin Education Association Council.

An amicus curiae brief was filed by *John J. Prentice, Julianne Barker* and *Prentice & Phillips LLP,* Milwaukee, on behalf of the Wisconsin Counties Association.

¶ 1. DIANE S. SYKES, J. This case involves the intersection of the federal Individuals with Disabilities Education Act (IDEA) and state statutes governing children in need of protection or services (CHIPS). The issue is whether the parent of a disabled child placed in a residential treatment facility pursuant to a circuit court's CHIPS order is exempt from the court's child support order if the child's individualized education program (IEP), mandated by the IDEA, subsequently specifies that the child's educational program be implemented at the residential treatment facility. We conclude that the parent is not relieved of the obligation to contribute to the child's support under these circumstances.

¶ 2. Randall H. petitioned the Calumet County Circuit Court to have his son, Robert H., adjudicated a child in need of protection or services pursuant to Wis. Stat. § 48.13(4) (1999–2000).[1] Robert was diagnosed with schizo-affective disorder, oppositional defiant disorder, and personality disorder with schizo-typal features, and because of these mental health problems, his family could not care for him at home. The circuit court entered a dispositional order finding Robert a child in need of protection or services and ordered him placed in a residential treatment facility, and also ordered Ran-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version.

dall to contribute toward Robert's support pursuant to Wis. Stat. §§ 46.10 and 48.355.

¶ 3.   Pursuant to Wis. Stat. § 115.81, the responsible local education agency (LEA) convened an IEP team, which recommended that Robert's educational program be implemented at the residential treatment facility while he was residing there pursuant to the CHIPS order. Randall then moved the circuit court for relief from the child support obligation, arguing that he was exempt from the support obligation by virtue of Robert's entitlement under the IDEA to a "free appropriate public education" (FAPE). *See* 20 U.S.C. § 1401(8). The circuit court denied the motion, Randall appealed, and the court of appeals certified the case to this court on the issue of whether the IDEA preempts state statutes requiring parents to contribute to the support of their children placed outside the home by a CHIPS order.

¶ 4.   We do not view this case as presenting a preemption question. The federal and state statutory schemes at issue here do not conflict, at least not under the circumstances of this case. Robert was placed in the residential treatment facility for mental health care pursuant to a CHIPS order of the circuit court. The IEP specifying that his educational program be implemented at the facility while he resided there did not constitute a residential placement necessary for educational purposes under the IDEA. Accordingly, the IDEA does not provide grounds for relief from the child support obligation in the CHIPS order. We affirm the circuit court's order denying relief.

## I. FACTS

¶ 5.   Robert H. was born on April 12, 1985. He is the minor child of Randall H. In the second grade,

Robert was provided speech and language services in response to problems with dysfluency, and he was also placed on medication for Attention Deficit Hyperactivity Disorder (ADHD). In the fifth grade, Robert was placed in special education programming for emotionally disturbed students. Over time Robert has required both inpatient (two hospitalizations at St. Elizabeth's in Appleton and one in Colorado) and outpatient mental health services to deal with concerns about potential harm to himself and others, depression, anger, aggressiveness, and auditory hallucinations. At home, Robert became aggressive when stressed and exhibited isolation, anxiety, temper outbursts, insecurity, and hygiene problems.

¶ 6. Despite his persistent mental health problems, Robert possesses superior intellectual ability. He began high school in the Stockbridge School District. While there, a full-time aide assisted him with work organization and completion, and with behavior control. This assistance was very beneficial to his education.

¶ 7. On December 23, 1999, however, Robert was hospitalized again, this time at the Winnebago Mental Health Institute (WMHI). Some nine months later, on September 27, 2000, Randall petitioned the Calumet County Circuit Court to have Robert adjudged a child in need of protection or services. See Wis. Stat. § 48.13. In the petition, Randall stated that Robert had been diagnosed at WMHI with schizo-affective disorder (bipolar type), oppositional defiant disorder, and personality disorder with schizo-typal features. The petition also stated that Robert's symptoms included auditory hallucinations, delusional and paranoid thoughts, homicidal and suicidal ideations, aggressive behaviors and threats, disorganized thinking, emotional dysregula-

tion, negative self-concept, and difficulty forming and maintaining relationships. A number of medications had been tried, but Robert's symptoms escalated whenever he was removed from the structure of the hospital environment. WMHI staff had recommended out-of-home placement in a residential treatment facility. Randall's petition concluded: "[d]ue to Robert's severe pathology, the family is unable to provide the care and treatment to meet his numerous needs, thereby necessitating residential out-of-home placement."

¶ 8. On October 30, 2000, the circuit court, the Honorable Donald A. Poppy, Judge, adjudicated Robert a child in need of protection or services. The court ordered out-of-home placement in a residential treatment facility and supervision by the Calumet County Department of Human Services (the Department) for one year. The Department recommended, consistent with a referral from WMHI, that Robert be placed at the Lakeview Neurological Rehabilitation Center in Waterford, and the circuit court adopted that recommendation.

¶ 9. The dispositional order also required Randall to contribute toward the expense of the out-of-home placement in an amount to be determined by the Department. *See* Wis. Stat. §§ 46.10(14)(b) and 48.355(2)(b)4. Randall and the County entered into a stipulation whereby Randall agreed to pay $170 per week toward Robert's CHIPS placement at Lakeview, effective October 31, 2000. The circuit court signed an order confirming the stipulation. The County thereafter notified Randall's employer of its obligation to withhold a portion of his income to meet the child support obligation. The total cost of Robert's care at Lakeview exceeded $9,000 per month.

¶ 10.   Robert was transferred to Lakeview on October 31, 2000. Lakeview is located within the Waterford Union High School District, which became Robert's responsible LEA upon his arrival at Lakeview. *See* Wis. Stat. § 115.81(1)(b).

¶ 11.   About two weeks later, on November 15, 2000, a Waterford School District IEP team met to address Robert's educational needs. Randall, representatives of the Waterford District, and two Calumet County representatives participated.

¶ 12.   The IEP team determined that Robert exhibited strong reading and math concept skills, but weaknesses in math computation, written language, and spelling. It found that, given adequate support, Robert could function well in the classroom. The IEP team noted that special education at Waterford Union High had been considered and rejected because Calumet County already had placed Robert at Lakeview due to his mental health issues. The IEP specified that Robert's educational program would be implemented at Lakeview.

¶ 13.   Randall then moved for relief from the child support order, asserting that the IDEA required Robert's placement at Lakeview to be at no cost to the parents. He requested suspension of future support payments and reimbursement of support payments already made.[2] The circuit court denied the motion, concluding that Robert was placed at Lakeview because of his mental health needs, not his educational needs, and therefore the IDEA did not relieve Randall of his obligation to contribute to Robert's support. The court further held that the IEP developed by the Waterford

---

[2] The amounts paid have been held in trust pending resolution of this case.

District, which specified that Robert would receive special education services at Lakeview while residing there, was "incidental" to his CHIPS placement.

¶ 14.   Randall appealed the circuit court's order, the court of appeals certified the case to this court pursuant to Wis. Stat. § 809.61, and we accepted the certification. We now affirm.

## II. STANDARD OF REVIEW

¶ 15.   The court of appeals certified the case on the question of whether the IDEA, "which requires a free appropriate public education (FAPE) to students with disabilities, preempt[s] Wis. Stat. §§ 48.355 and 46.10 . . . which require parents to contribute to their children's support when placed outside the home by a juvenile court." As we have noted, we do not view this case as presenting a preemption issue, and neither do the parties. They assert, and we agree, that the federal and state statutes do not conflict, although Randall argues in the alternative that if there is a conflict, then the federal law preempts.

¶ 16.   We see this case as presenting a threshold question of whether Robert's placement at Lakeview was a residential educational placement under the IDEA, which carries with it the requirement that it be at no cost to the child's parents. See 20 U.S.C. §§ 1401(8), (22), and (25); 34 C.F.R. § 300.302 (2000). The preemption issue does not arise if Robert's placement in the residential program was not for educational purposes under the IDEA.

¶ 17.   The federal courts have held that the question of whether a residential placement is educational and therefore covered by the IDEA is a mixed question

of fact and law.[3] *Butler v. Evans,* 225 F.3d 887, 892 (7th Cir. 2000); *Board of Educ. of County High Sch. No. 218 v. Illinois State Bd. of Educ.,* 103 F.3d 545, 548 (7th Cir. 1996); *Burke County Bd. of Educ. v. Denton,* 895 F.2d 973, 980 (4th Cir. 1990); *Kruelle v. New Castle County Sch. Dist.,* 642 F.2d 687, 692–693 (3d Cir. 1981). "[O]n appeal, we review the district court's judgment as a mixed question of fact and law, reviewing the ultimate determination de novo but reversing the court's factual findings only if clearly erroneous." *Butler,* 225 F.3d at 892 (citing *Heather S. v. State of Wis.,* 125 F.3d 1045, 1052–53 (7th Cir. 1997)).

¶ 18. Here, the circuit court's factual findings were minimal, basically consisting of a brief recitation of the procedural history of the case. The facts set forth above are from the procedural record and the IEP prepared for Robert by the Waterford School District, which was part of the record on the motion for relief from the child support order. The parties do not disagree about the procedural history or the underlying

---

[3] The Seventh Circuit uses a fact-driven approach to identify an "educational placement" for purposes of parental reimbursement claims under the IDEA. Because "the term 'educational placement' is not statutorily defined," determining whether a placement is educational is "an inexact science." *Board of Educ. of County High Sch. No. 218 v. Illinois State Bd. of Educ.,* 103 F.3d 545, 548 (7th Cir. 1996). "The meaning of 'educational placement' falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Id.* "Hesitant to definitively establish the meaning of 'educational placement' for our circuit, we adopt our sister circuits' fact-driven approach. We accept as the outer parameters of 'educational placement' that it means something more than the actual school attended by the child and something less than the child's ultimate goals." *Id.* at 549.

evidentiary facts. This appeal turns on the ultimate determination of whether Robert was placed at Lakeview for educational purposes under the IDEA, which involves a determination of whether the facts meet the applicable legal standard. We apply a de novo standard of review.

## III. ANALYSIS

¶ 19.  The IDEA provides special education funding to the states for the education of disabled children, and also regulates the education of disabled children by conditioning receipt of this funding on compliance with federal statutory and code requirements.[4] *See* 20 U.S.C. §§ 1400–1487. The IDEA "represents an ambitious federal effort to promote the education of handicapped children." *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 179 (1982) (discussing the Education for All Handicapped Children Act, later renamed the IDEA). Its purpose is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).

¶ 20.  As is pertinent here, a FAPE, or "free appropriate public education" under the IDEA, is "special education and related services," provided at public expense, supervision, and direction, pursuant to an IEP, or "individualized education program." 20 U.S.C. § 1401(8).

---

[4] Wisconsin's implementation of the IDEA is found in Chapter 115. *See* Wis. Stat. §§ 115.758–115.90. These sections spell out Wisconsin's procedural requirements for implementing the IDEA, including the rights and responsibilities of the various agencies and individuals impacted. Wisconsin's version is identical to the IDEA in most respects and is to be "construed in a manner consistent with" the IDEA. Wis. Stat. § 115.758.

The IDEA requires the LEA, or "local educational agency," to develop an IEP for any child with a disability. 20 U.S.C. § 1401(11) and (15).

¶ 21. The IDEA defines "special education" as:

[S]pecially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including — (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education.

20 U.S.C. § 1401(25). "Related services" are:

[T]ransportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(22). The IDEA generally requires "mainstreaming"—educating disabled children in the least restrictive environment and in school with non-disabled children—to "the maximum extent appropriate." 20 U.S.C. § 1412(5)(A); *see also Rowley,* 458 U.S. at 202–03.

¶ 22. In certain limited circumstances, the IDEA requires that a public or private residential educational program be provided at no cost to the parents. *See* 20 U.S.C. § 1412(10)(B)(i); 34 C.F.R. § 300.302. Specifically,

34 C.F.R. § 300.302 provides that "[i]f placement in a public or private residential program is *necessary* to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child." 34 C.F.R. § 300.302 (emphasis added).

¶ 23. Federal courts deciding parental reimbursement cases under the IDEA have generally held that the test for whether a child's placement in a residential program is educational and therefore reimbursable under the IDEA focuses on whether the child's residential placement is "necessary for educational purposes." *Butler*, 225 F.3d at 893; *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1471 (6th Cir. 1996) (a residential placement is appropriate and free only if it "is necessary for educational purposes as opposed to medical, social, or emotional problems that are separable from the learning process"); *Clovis Unified Sch. Dist. v. California Office of Admin. Hearings*, 903 F.2d 635, 643 (9th Cir. 1990) (analysis focuses on whether a residential placement "may be considered necessary for educational purposes"); *Burke County Bd. of Educ.*, 895 F.2d at 980 (the IDEA covers residential placement only if such placement is "essential for the child to make *any* educational progress at all") (emphasis in original) (citing *Abrahamson v. Hershman*, 701 F.2d 223, 227 (1st Cir. 1983), and *Matthews v. Davis*, 742 F.2d 825, 829 (4th Cir. 1984)); *McKenzie v. Smith*, 771 F.2d 1527, 1534 (D.C. Cir. 1985) (determination of whether the IDEA requires residential placement turns on whether full-time residential placement is necessary for educational purposes); *Kruelle*, 642 F.2d at 693 (only a residential placement that is "a necessary predicate for learning" is covered by the IDEA).

¶ 24. If a residential placement is "a response to medical, social, or emotional problems that is necessary quite apart from the learning process," then it is not an educational placement for purposes of the IDEA. *Butler,* 225 F.3d at 893 (quoting *Clovis,* 903 F.2d at 643). The IDEA does not require reimbursement for a residential placement that "addresses the child's medical, social or emotional disabilities apart from [his] special education needs." *Id.* at 894 (citing *Clovis,* 903 F.2d at 646–47).

¶ 25. Robert was placed at Lakeview pursuant to the circuit court's CHIPS order, a proceeding that Randall had initiated because Robert's mental illness necessitated out-of-home placement. His placement there was clearly in response to his psychiatric and emotional problems and was necessary quite apart from his special education needs. He had been hospitalized at WMHI for many months prior to the CHIPS petition, was diagnosed with several serious psychiatric disorders, and had been recommended for a residential mental health placement by the staff at WMHI. Robert's IEP, prepared after he arrived at Lakeview pursuant to the CHIPS order, did not conclude that a residential placement was an educational necessity; it merely accepted that Robert had been placed in residential treatment for mental health issues by the circuit court's CHIPS order, and for that reason specified that his IEP should be implemented there.[5]

¶ 26. We find it significant that Robert's IEP does not specify residential placement as a "related service."

[5] Randall conflates the IEP and the CHIPS order to argue that Robert's placement at Lakeview was precipitated by his educational needs. *See, e.g., Butler v. Evans,* 225 F.3d 887, 893 (7th Cir. 2000). Like the commitment and IEP proceedings at issue in *Butler,* the CHIPS dispositional order and the IEP

In the program summary on page I-14 of Robert's IEP, where necessary "related services" are listed, the box next to the statement "[n]one needed to benefit from special education" is checked, and the boxes next to the various itemized "related services" are left blank. The box next to "other" related services is also left blank.[6] If the IEP team had concluded that a full-time residential program was necessary for Robert to make educational progress, the team would have listed it in this section of the IEP. It did not. In fact, residential programming is not identified as an educational necessity anywhere in the IEP.[7] We conclude that Robert'splacement at Lakeview was not necessitated by his educational needs for purposes of the IDEA.[8]

recommendations in this case "were decided independently in separate proceedings . . . " and Robert was placed at Lakeview "outside of the IDEA procedures and IEP recommendations." *Id.* While an IEP and a CHIPS proceeding cannot be conflated for purposes of IDEA analysis, we do not mean to suggest that the presence of a separate CHIPS proceeding automatically precludes a finding that a residential placement is educational for purposes of the IDEA.

[6] The IEP does conclude that Robert's behavioral problems interfere with his education and the education of other students, but it does so in the context of evaluating his basic need for special education services generally, not residential placement in particular. The IEP lists several interventions and special educational support services recommended to address Robert's behavioral problems (e.g., one-to-one assistance with school work, coping skill strategies, cool down periods), but does not specify that residential placement is recommended or necessary to Robert's educational progress.

[7] Federal regulations require that the educational placement of a disabled child be "based on his or her IEP." 34 C.F.R. § 300.552(b)(2) (2000).

[8] We also note that Stockbridge, Robert's original LEA, was not involved in placing Robert at either the Winnebago Mental Health Institute or Lakeview. The IEP created by Stockbridge

¶ 27. Nothing in state law changes this conclusion. The circuit court—not an LEA—has exclusive jurisdiction over children adjudged to be in need of protection or services. Wis. Stat. § 48.13. State law provides that the circuit court may include in a CHIPS dispositional order a requirement that the parent of a child placed in a residential treatment facility or child caring institution contribute to the support of the child. Wis. Stat. §§ 46.10(14)(b) and 48.355(2)(b)4.

¶ 28. State law further provides that whenever a county or the state anticipates or recommends to a court that a child be placed in a child caring institution, the county or state "shall notify the responsible local educational agency," which in turn shall "appoint an individualized education program team to review and revise, if necessary, the child's individualized education program." Wis. Stat. § 115.81(3)(a) and (b)1. Under these circumstances, the county or state, rather than the LEA, is responsible for paying "all of the child caring institution related costs of educating the child while the child resides in the child caring institution." Wis. Stat. § 115.81(4)(b)5.

██

¶ 29. We read these state statutory provisions as allowing the circuit court to order child support when a CHIPS child is placed in residential treatment but precluding the court from assessing any of the facility's education-related costs against the parents of the child.

placed Robert in regular classes with a full-time aide who worked with him on a variety of tasks. Both Randall and the County agree that these services were very beneficial to Robert's education. His educational needs were being met without placement in a residential program. This supports our conclusion that psychiatric needs triggered Robert's residential placement at Lakeview, not educational needs.

There is no evidence that Randall's court-ordered contribution of $170 per week toward Robert's $9,000 per month care at Lakeview pertains to the facility's education-related costs.

¶ 30. Accordingly, because Robert's placement in the residential program at Lakeview was necessitated not by his educational needs, but, rather, his mental illness, and was brought about by the circuit court's CHIPS order rather than Robert's IEP, it was not an educational placement for purposes of the IDEA. Therefore, the IDEA does not provide a basis for relief from the child support obligation under the CHIPS order. Nor does Wis. Stat. § 115.81 provide a basis for lifting that obligation. We affirm the circuit court's denial of Randall's motion for relief from the child support order.

¶ 31. *By the Court.*—The order of the Calumet County Circuit Court is affirmed.